UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **In re Wasserstrom Holdings, Inc. Data Breach Litigation** | Case No.: 2:23-CV-02070<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Elizabeth Preston Deavers |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Fed. R. Civ. P. 23(e), and this Court's Preliminary Approval Order (ECF No. 43), Plaintiffs Kevin Gruscinski and Gregory Coffey (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, hereby move this Court for Final Approval of the Class Action Settlement. The $350,000 non-reversionary Settlement Fund is a substantial recovery for the more than 10,000 Class Members and is fair, reasonable, and adequate by all measures.

In support thereof, Plaintiffs rely upon the accompanying Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; the Declaration of Dylan J. Gould in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Gould Decl.") attached as **Exhibit 1**; the Declaration of Amy Lechner of Simpluris, Inc. Regarding Notice and Settlement Administration ("Simpluris Decl.") attached as **Exhibit 2**; Plaintiffs' Unopposed Motion for Preliminary Approval, previously granted (ECF Nos. 42, 43) ("Motion for Preliminary Approval"); Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 44) ("Fee Motion"); records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court at or before the March 31,

2025 Final Approval Hearing or as soon as practicable thereafter. For the Court's convenience, a Proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 3**.

## MEMORANDUM IN SUPPORT

I. **INTRODUCTION**

The Class's meaningful recovery in this case is a $350,000 non-reversionary Settlement Fund to resolve claims arising from the April 2023 Data Breach impacting over 10,000 individuals (the "Data Breach"). *See* ECF No. 42-1, Settlement Agreement ("S.A."). The Data Breach involved the potential access of names and Social Security numbers of Defendants' former employees and customers. *See* ECF No. 28, Consolidated Amended Class Action Complaint, ("Compl."), ¶ 3.

The Settlement Fund is designed to cover all settlement costs and provide two forms of monetary benefits to Class Members: (1) *pro rata* settlement payments from the Settlement Fund (after payment of any documented monetary losses as described herein) to Class Members who submit a valid Claim Form; and (2) reimbursement for documented out-of-pocket losses up to $5,000.00 per claimant, including—without limitation—unreimbursed losses relating to fraud or identity theft; professional fees for attorneys, accountants, and credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the Data Breach, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. S.A. ¶ 59. In addition, Defendant confirmed that it has made changes to its information security practices that will further protect Plaintiffs' and Class Members' Private Information in the future. *Id.* ¶ 74.

On September 18, 2024, the Court issued an Opinion and Order granting preliminary approval of the Settlement. *See* ECF No. 43 ("Preliminary Approval Order"). In doing so, the Court

found the Settlement Agreement was "fair, reasonable and adequate" and that the Notices "satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances." *Id.* at PageID 431-33, ¶¶ 3, 11.

The Court-approved notice plan has now been executed and nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. Of the approximately 10,501 Class Members who were sent direct notice of the proposed settlement, none have filed an objection and none have requested to be excluded. Gould Decl. ¶ 11; Simpluris Decl., ¶ 19. This case boasts an 8.41% claims rate, which is well within the realm of reasonableness for data breach actions. *See, e.g.*, *Hightower v. Receivables Performance Management*, No. 2:22-CV-01683, ECF No. 85 (W.D. Wash. Dec. 6, 2024) (approving settlement with .65% claims rate). Because the Settlement is an excellent result for the Class, particularly in view of the risks and delays involved in continued litigation, Plaintiffs respectfully request that the Court grant final approval of the Settlement, grant Plaintiffs' pending Fee Motion, and enter a final order and judgment dismissing this case.

## II. BACKGROUND

### A. Procedural History

Plaintiffs brought this data privacy class action on behalf of themselves and a Class of individuals whose personally identifiable information ("PII") was allegedly compromised in the Data Breach announced by Defendant in April 2023. On June 27, 2023, the first of two class action lawsuits was filed by Plaintiff Gruscinski against Defendant alleging that Defendant failed to protect employees, their dependents, and other third parties' sensitive information ("Private Information") from a ransomware attack. *Gruscinski v. Wasserstrom Holdings, Inc.*, Case No. 2:23-CV-02070, ECF No. 1. A related complaint was filed not long after by Plaintiff Coffey. The actions

3

were consolidated and on October 23, 2023, Plaintiffs filed a Consolidated Class Action Complaint alleging claims for (i) Negligence; (ii) Negligence Per se; (iii) Breach of Implied Contract; (iv) Unjust Enrichment; and (v) Breach of Fiduciary Duty.

After Plaintiffs filed their Amended Consolidated Complaint, the Parties agreed to attend private mediation with well-respected mediator Marjorie Aaron on April 2, 2024. Gould Decl. ¶ 2. Prior to mediation, Defendant produced discovery allowing the Parties to evaluate each side's respective position regarding the underlying cyber-attack and class size. *Id.* ¶ 3. While the Parties made substantial progress towards resolution at mediation, they were unable to reach a resolution. *Id.* ¶ 2. The Parties continued discussions in the following weeks and were ultimately able to come to a resolution as detailed in the Settlement Agreement. *Id.* On August 19, 2024, Plaintiffs filed their Motion for Preliminary Approval, which the Court granted on September 18, 2024, preliminarily approving the Settlement and conditionally certifying the Class. Thereafter, Plaintiffs initiated the Notice program, through the Settlement Administrator, and filed the Fee Motion.

**B. Terms of the Settlement Agreement**

As explained previously in the Motion for Preliminary Approval, the Settlement provides meaningful relief to a large class of persons impacted by the Data Breach without requiring further delay, risk, and expense. *See* ECF No. 42, PageID 274-75. The Settlement Class is defined as:

> **All individuals residing in the United States who were sent a notice by Wasserstrom informing them of the Data Incident Wasserstrom discovered in April 2023.**

S.A. ¶ 44. The Class specifically excludes: (1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendant, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or their parents have a controlling

interest, and their current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id.*

The Class is comprised of approximately 10,501 individuals nationwide. Gould Decl. ¶ 4; Simpluris Decl. ¶ 6. Under the Settlement, Defendant has agreed to pay a total of $350,000 into the Settlement Fund to make payments to Class Members and pay the costs of Settlement Administration, attorneys' fees and expenses, and Service Awards to Plaintiffs. S.A. ¶¶ 20, 27. The $350,000 Settlement Fund provides the following fair and reasonable monetary benefits to eligible Settlement Class Members:

i. <u>Compensation for Unreimbursed Economic Losses</u>: Settlement Class Members who claim they suffered Out-of-Pocket Losses incurred as a result of the Data Incident, are eligible for a payment of the amount of loss up to five thousand dollars ($5,000). *Id.* ¶ 59(i); *see also* Gould Decl. ¶ 5. Such monetary losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Breach through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. S.A. ¶¶ 52, 59. To receive this reimbursement, Settlement Class Members were required to submit documentation supporting their claims including receipts or other documentation not "self-prepared" by the claimant. *Id.* ¶ 59(i).

ii. *Pro Rata* Cash Payment: All Settlement Class Members were eligible to submit a claim for a cash payment that was projected to exceed $100 (and is now projected

to be approximately $229.20 each). *Id.* ¶ 59(ii); *see also* Gould Decl. ¶ 6; Simpluris Decl. ¶ 26. The actual amount of the Cash Payment was required to be adjusted up or down *pro rata* depending on the amount of claims submitted for this benefit and the amount of residual funds remaining after payment of any documented monetary losses, payment of attorneys' fees and expenses, the proposed Class Representatives' Service Awards, and the costs of Settlement Administration. S.A. ¶ 59(ii).

The Settlement also provides that Plaintiffs received assurances that Defendant has implemented certain reasonable changes to its information security systems. *Id.* ¶ 74. Defendant paid or will pay costs associated with these security-related measures separate and apart from the Settlement Fund. *Id.* These remedial measures inure to the direct benefit of the Settlement Class, whose Private Information might remain in Defendant's computer systems. The adoption of these remedial measures which Defendant has implemented will substantially enhance the protection of the Settlement Class Members' Private Information stored by Defendant.

C. **Preliminary Approval and the Notice Process**

On September 18, 2024, The Court entered the Preliminary Approval Order preliminarily approving the Settlement and conditionally certifying the Class. Consistent with the Preliminary Approval Order and the requirements of Rule 23(e), Defendant provided Simpluris with a data file containing known Settlement Class Member names and mailing addresses. Simpluris Decl. ¶ 6.

To ensure that the Notice would be delivered to class members, Simpluris compared the address data provided by Defendant against the United States Postal Service ("USPS") National Change of Address ("NCOA") database and updated the data to a Settlement-specific database with the changes received from the NCOA. *Id*. ¶ 7. Simpluris then sent written notice to each of

the 10,501 Class Members for whom a valid mailing address was known. *Id.* ¶¶ 8-10. If a mailed notice was returned without a forwarding address, Simpluris performed a public records search, commonly called a "skip trace," to locate the Class Member's current address and remailed direct notice to the newly-located address or forwarding address. *Id.* ¶ 11. Of the 1,390 returned Postcard Notices, 998 were re-mailed to either a newfound address or with forwarding addresses provided by USPS, and thereafter, 392 were determined to be undeliverable because no updated address was available. *Id.* ¶ 11. Likewise, Plaintiffs sent a Reminder Postcard Notice to Settlement Class Members. *Id.* ¶ 12. Of the 10,110 Reminder Notices sent, only 767 were returned. *Id.* ¶¶ 12-13. Of those 767 returned notices, 299 were remailed, and 468 were determined to be undeliverable, on the same basis as the original Postcard Notices. *Id.* ¶ 13.

In addition to direct notice by postcard, Simpluris prepared and maintained a Settlement Website, located at https://www.WasserstromClassActionSettlement.com/. *See* Gould Decl. ¶ 10; Simpluris Decl. ¶ 15. The Settlement Website includes downloadable copies of relevant settlement documents, including the Long Form Notice and Claim Form, the Complaint and Complaint Amendment, the Motion for Preliminary Approval and Preliminary Approval Order, the Settlement Agreement, and the Fee Motion; important dates and deadlines for Settlement Class Members; FAQs. Gould Decl. ¶ 10; Simpluris Decl. ¶ 16. Through the Settlement Website, Class Members could submit a claim online and contact the Settlement Administrator, including at a toll-free number (833-285-3416) and mailing address for the Settlement. Gould Decl. ¶ 10; Simpluris Decl. ¶ 17. The website has been available to the public since October 16, 2024. Simpluris Decl. ¶ 15. The information regarding the toll-free telephone number was also included in the Notice to enable Settlement Class Members to make inquiries regarding the Settlement. *Id.* ¶ 17. This telephone number is active and has been available to the public since October 18, 2024. *Id.*

7

**D. Effectiveness of Notice**

Simpluris calculates that between Postcard Notice through the USPS and the website as described above, 96.27% of the Class received at least one form of notice. Simpluris Decl. ¶ 14. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines,[1] which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[2] These facts confirm that notice was distributed in a reasonable manner to all class members who would be bound by the settlement and satisfied the Constitution's Due Process requirements.

The deadline to submit a claim form was January 16, 2025 Simpluris Decl. ¶ 20. Upon initial review, Simpluris received 868 valid claim form submissions or a claims rate of approximately 8.41%. *Id.* ¶ 21; *see also* Gould Decl. ¶¶ 11-12. The expected pro rata cash payout per Class Member is approximately $229.20 each. Gould Decl. ¶ 6; Simpluris Decl. ¶ 26.

**III. ARGUMENT**

**A. Final Class Certification for Settlement Purposes is Appropriate**

This Court preliminary approved Class Certification for Settlement purposes. Accordingly, final approval is appropriate.

**1. The Elements of Rule 23(a) and Rule 23(b)(3) are Satisfied**

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of Subsection (a) which provides

---

[1] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[2] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010), *available at* https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf.

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiffs incorporate by reference § IV(B) in the Motion for Preliminary Approval to assert that class certification under Rule 23 is warranted for settlement purposes. Plaintiffs' rationale is unchanged and, therefore, the Court should likewise certify the Settlement Class. *Cf. In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 745 (E.D. Wis. 2024) ("The Court has no independent basis to question whether final certification of the class as previously defined or appointment of Plaintiffs as class representatives … is appropriate. Accordingly, the Court does not disturb its earlier finding that the settlement class in this matter meets the requirements of Rule23(a) and (b) and that Plaintiffs are appropriate class representatives.").

### B. The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances and was Successful.

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). The latter rule requires that notice to the class be the "best notice that is practicable under the circumstances." Rule 23(c)(2); *see In re Auto. Parts Antitrust Litig.*, No. 12-CV-00103, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) (program satisfied Rule 23 and due process). The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (citing Federal Judicial Center, Manual for Complex Litig. § 21.312 (4th ed. 2004)). There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable

9

effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1223 (6th Cir. 1981); *Vassalle v. Midland Funding, LLC*, No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

Class Counsel worked closely with the Settlement Administrator to develop and implement the notice program preliminarily approved by the Court. The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). Doc. 42-1 (PageID # 318-338). The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the Settlement and the Settlement Website included a section for FAQs. The Settlement Administrator estimates that between direct notice and the Website, the notice program reached approximately 96.27% of the Class. Simpluris Decl. ¶ 14.

The current claims rate of 8.41% is reasonable in the data breach context. *See e.g.*, *Hightower*, No. 2:22-cv-01683, ECF No. 85 (approving settlement with .65% claims rate); *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550, at *3 (D. Neb. Aug. 21, 2024) (finding parties' efforts to afford class members the opportunity to obtain relief satisfied the Federal Rules and due process when 95,644 class action notices were sent to the settlement class and 1,200 members filed claims); *Summers v. Se Mar Cmty. Health Ctrs.*, 29 Wn. App. 2d 476, 486 (2024) (finding trial court did not abuse its discretion in approving data breach settlement with 0.5% claims rate given that it considered the potential difficulty in reaching class members and the provision of cy pres relief); *Pollard v. Remington Arms Co., LLC*, 896 F.3d

10

900, 905–06 (8th Cir. 2018) (finding district court did not abuse its discretion in approving settlement with 0.29% claims rate in non-data breach class action).

Accordingly, the notice program satisfies the requirement of Rule 23 and due process and should be approved by the Court.

### C. The Settlement Agreement Merits Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (internal quotation omitted).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include:

A. Whether the class representatives and class counsel have adequately represented the class;

B. Whether the proposal was negotiated at arm's length;

C. Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

11

   D. Whether the proposal treats class members equitably.

*Id*. These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at *Advisory Committee's Note to 2018 amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020). Case law and 23(e) factors weigh in favor of granting final approval here.

### 1. The Settlement Resulted from Mediated, Arm's Length Negotiations without any Risk or Evidence of Fraud or Collusion

Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 11.41 at 90 (4th Ed. 2002); *see also Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"). The Settlement was the result of extensive, contentious, arm's length negotiations between counsel with substantial experience handling complex, class action litigation. Gould Decl. ¶ 15. Settlement negotiations in this case took place over the course of several months and involved a full-day mediation session that was unsuccessful with well-respected mediator Marjorie Aaron. *Id.* ¶¶ 2, 16. No collusion existed during the settlement process. *Id.* ¶ 16.

### 2. The Complexity, Expense, Likely Duration of the Litigation, and Substantial Risk for Plaintiffs Warrants Final Approval of the Settlement

The Sixth Circuit has identified the likelihood of success on the merits as the most important factor a district court must evaluate in assessing the fairness of a class action settlement.

12

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.50 (4th ed. 2002)).[3] This case is no different in that it is a data privacy class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

---

[3] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." (internal citations and quotations omitted)); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

Class certification is another hurdle that would have to be met—and one that has been denied in certain other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). Though Courts (including within the Sixth Circuit) have more recently granted contested motions for class certification in the data breach context (*see, e.g.*, *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661 (W.D. Ky. 2024) (certifying contested class of employees whose Social Security numbers were stolen in data breach), it would likely take years of intense litigation just to reach that point. *See, e.g.*, *id.* (certifying class after roughly seven years of litigation). Even if Plaintiffs are successful in obtaining certification of a litigation class, the certification would not be set in stone. *Long v. HSBC USA, Inc.*, No. 14-cv-6233, 2015 WL 5444651, at *11 (S.D.N.Y. Sept. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to decertify by defendants, requiring additional briefing.").

Here, Plaintiffs would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and Class Members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval. While Plaintiffs are confident in the strength of their claims, they are also pragmatic and aware of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant has consistently denied the allegations raised by Plaintiffs and made clear at the outset that it would

vigorously defend the cases. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face the further risk of not receiving any relief at all.

The Settlement offers immediate, significant, and substantial relief to all Class Members who submit a claim. The Settlement delivers real value to Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

### 3. The Fact Plaintiffs' and Defendant's Counsel, as well as Plaintiffs, Recommend Approval of the Settlement Strongly Indicates that the Settlement is Fair, Reasonable, and Adequate

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by a class representative who, like the Plaintiffs here, was intimately involved in the litigation and support the Settlement. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiffs support this Settlement because it provides Class Members with immediate and substantial benefits. As the result of informal discovery conducted and extensive settlement negotiations, the Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation

15

is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

### 4. The Class's Reaction Overwhelming Supports the Settlement

That none of the Class Members have objected to the Settlement or requested exclusion, and Class Members have submitted claims at the rate of roughly 8.41% indicates that the Class strongly supports the Settlement. This further supports final approval. Gould Decl. ¶ 11; *see also BleachTech LLC v. United Parcel Serv., Inc.*, No. 14-12719, 2022 WL 2835830, at *3 (E.D. Mich. July 20, 2022) (noting that no objections to the class action settlement "was a clear indication that the Settlement Class Members support the Settlement."); *Moore v. Med. Fin. Servs., Inc.*, No. 2:20-cv-02443, 2021 WL 6333304, at *4 (W.D. Tenn. Nov. 30, 2021) (granting final approval when "no objections were filed and only five members requested to be excluded.").

### 5. This Settlement Serves the Public Interest

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[4] This Settlement serves the public's interest by avoiding protracted litigation and freeing up judicial resources. *See In re Telectronics Inc.*, 137 F. Supp. 2d 985, 1025 (S.D.

---

[4] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (noting that "[p]ublic policy generally favors settlement of class action lawsuits").

Ohio 2001); *see also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting the settlement of a class action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals").

Particularly considering the immediate cash benefits the Settlement provides to the Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

### 6. The Other Rule 23(e) Factors Support the Settlement

To the extent not addressed above, the remaining Rule 23(e) factors support the Settlement. The Class Representatives and Class Counsel have adequately represented the class, as shown by the work performed, the relief obtained, and lack of objections to the Settlement. The method of distributing relief was chosen to make the claims process as easy as possible. Rule 23(e)(2)(C)(ii). The attorneys' fees of one-third of the common fund are well within the range of reasonableness for fees in a case of this nature and will not be paid until the Effective Date. Rule 23(e)(2)(C)(iii); *see also* Doc. 44, PageID 444-45 (collecting cases supporting a fee request of 1/3 of the common fund in Ohio state and federal courts). There is no undisclosed agreement made in connection with the Settlement. Gould Decl. ¶ 16; *see also* Rule 23(e)(2)(C)(iv). All Class Members are treated equitably relative to each other—they all have the opportunity for a *pro rata* payment of money. Rule 23(e)(2)(D). In total, all of the factors to be considered when determining whether to grant final approval weigh in favor of finding that the Settlement is fair, reasonable, and adequate.

### IV. CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs Gruscinski and Coffey respectfully request that the Court grant final approval of class action settlement, including authorizing the payment of settlement benefits to Class Members as set forth in the

Settlement Agreement and awarding Service Awards in the amount of $5,000 to each Class Representative ($10,000 total), $116,655.00 in reasonable attorneys' fees, $6,197.64 for Class Counsel's costs and expenses, and the cost of settlement administration (projected by the Settlement Administrator to be $26,225.00). A proposed order is attached as **Exhibit 3**.

Date: March 17, 2025                              Respectfully submitted,

*/s/ Dylan J. Gould*
Terence R. Coates (0085579)
Dylan J. Gould (0097954)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Tel: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Raina C. Borrelli*
Samuel J. Strauss*
**STRAUSS BORELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
Fax: (608) 509-4423
*raina@turkestrauss.com*
*sam@turkestrauss.com*

Philip J. Krzeski (0095713)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
*pkrzeski@chestnutcambronne.com*

*Interim Plaintiffs' Counsel*

*\* Admitted Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 17, 2025, I served a copy of the foregoing via electronic filing in the ECF system.

                                        */s/ Dylan J. Gould*
                                        Dylan J. Gould (0097954)