### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

In re

**Wasserstrom Holdings, Inc.
Data Breach Litigation,**

**Case No. 2:23-cv-2070**

**Judge Michael H. Watson**

**Magistrate Judge Deavers**

## OPINION AND ORDER

Kevin Gruscinski and Gregory Coffey (together, "Class Representatives" or "Plaintiffs"), on behalf of themselves and all others similarly situated (collectively, "Class Members"), move for final approval of the class action settlement agreement. ECF No. 45; *see also* ECF No. 42-1 ("Settlement Agreement" or "Agreement").[1] Defendant Wasserstrom Holdings, Inc. ("Wasserstrom") does not oppose. *See generally* ECF No. 45. For the reasons below, Plaintiffs' motion is **GRANTED.**

### I.    BACKGROUND

**A.    Procedural History**

Plaintiffs allege that, on April 20, 2023, Wasserstrom was hacked, exposing certain personally identifiable information (names and Social Security numbers) of employees and customers. *See* Agmt. § I. ¶ 1, ECF No. 42-1 at PAGEID # 291. A couple months later, on June 19, 2023, Wasserstrom notified

---

[1] The capitalized terms used herein are defined according to the Settlement Agreement. *See Agmt.* § II, ECF No. 42-1 at PAGEID # 292–97.

those whose personally identifiable information was leaked in the data breach. *Id.*

Several days after the announcement, Kevin Gruscinski, individually and on behalf of a putative class, filed an action against Wasserstrom in the Southern District of Ohio. *Gruscinski v. Wasserstrom Holdings Inc.*, Case No. 2:23-cv-2070. The next day, Gregory Coffey, individually and on behalf of a putative class, filed another action against Wasserstrom in the Southern District of Ohio. *Gruscinski v. Wasserstrom Holdings Inc.*, Case No. 2:23-cv-2424. The Court consolidated their actions. ECF No. 23 (Case No. 2:23-cv-2070). In the consolidated case, the Class Representatives brought the following claims: negligence, negligence per se, breach of implied contract, unjust enrichment, and breach of fiduciary duty. *See generally* ECF No. 28.

After informal discovery, the Parties engaged in a private mediation with Marjorie Aaron, beginning on April 24, 2024. *See* Agmt. § I. ¶ 3, ECF No. 42-1. Although the mediation did not result in a settlement, the parties continued their negotiations and, in the following weeks, arrived at the principal terms of a settlement. *Id.* The Parties have since filled in the details and agreed to settle the consolidated case on the terms and conditions set forth in the Settlement Agreement. *See generally id.*

**B.     Settlement Agreement**

The Agreement defines the Settlement Class as:

All individuals residing in the United States who were sent a notice by Wasserstrom informing them of the Data Incident Wasserstrom discovered in April 2023.

*Id.* § II. ¶ 44.  The Agreement excludes from the class:

(1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendant, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest, and their current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

*Id.*  In total, the Class is comprised of approximately 10,501 individuals

nationwide.  Mot. Ex. 1 (hereinafter "Gould Decl.") at ¶ 4, ECF No. 45-1; *see also*

Mot. Ex. 2 (hereinafter "Simpluris Decl.") at ¶ 6, ECF No. 45-2.

If finally approved, the proposed Settlement will compensate all Class

Members for the data breach.  Wasserstrom will commit $350,000 to the

Settlement Fund.  *See* Agmt. § III. ¶ 53, ECF No. 42-1.  The Settlement Fund will

be used to make direct payments to Class Members of two kinds:

i.    *Compensation for Unreimbursed Economic Losses*: Settlement Class Members who claim they suffered Out-of-Pocket Losses incurred as a result of the Data Incident, are eligible for a payment of the amount of loss up to five thousand dollars ($5,000).  Such monetary losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Breach through the date of claim submission; and miscellaneous

expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. To receive this reimbursement, Settlement Class Members were required to submit documentation supporting their claims including receipts or other documentation not "self-prepared" by the claimant.

ii. *Pro Rata Cash Payment*: All Settlement Class Members were eligible to submit a claim for a cash payment that is now projected to be approximately $216 each.[2] The actual amount of the Cash Payment was required to be adjusted up or down pro rata depending on the amount of claims submitted for this benefit and the amount of residual funds remaining after payment of any documented monetary losses, payment of attorneys' fees and expenses, the proposed Class Representatives' Service Awards, and the costs of Settlement Administration. The Settlement Fund will also be used to pay for Settlement Administration, attorneys' fees and expenses, and Service Awards to Class Representatives.

*Id.* § IV. 59. Further details concerning Settlement payments to Class Members are found in Section IV of the Settlement Agreement.

Wasserstrom has also implemented certain changes to its information security systems, at its own cost, under the Settlement. *Id.* § IV. 74. Plaintiffs recognize that "[t]he adoption of these remedial measures . . . will substantially enhance the protection of the Settlement Class Members' Private Information stored by Defendant." Mot. 6, ECF No. 45. As a result, "[t]hese remedial measures inure to the direct benefit of the Settlement Class[.]" *Id.*

---

[2] Class Counsel represented at the Fairness Hearing that the figure has changed since Plaintiffs moved for Settlement approval. Although that motion lists a slightly higher figure, the most up-to-date expected payment is around $216.

The Settlement Agreement also includes a release that relinquishes Class Members' claims arising out of or relating to the data breach.  Agmt., § IX., ECF No. 42-1.

## C.    Preliminary Approval and Fairness Hearing

After reaching the Settlement Agreement with Wasserstrom, Plaintiffs moved for Preliminary Approval.  ECF No. 42.  The Court granted that motion, preliminarily approving the Settlement Agreement and conditionally certifying the Class.  ECF No. 43.  The Court also directed the parties to proceed with the Notice Program, finding that it provides the best notice practicable under the circumstances and thus satisfies the requirements of due process and Federal Rule of Civil Procedure 23.  *Id.*

## D.    Notice

Consistent with the Preliminary Approval Order and the requirements of Rule 23(e), Wasserstrom gave a data file containing known Settlement Class Member names and mailing addresses to the Settlement Administrator, Simpluris.  Simpluris Decl. ¶ 6, ECF No. 45-2.  Simpluris then compared the address data that it received from Wasserstrom with the United States Postal Service ("USPS") National Change of Address ("NCOA") database and updated the data to a Settlement-specific database with the changes received from the NCOA.  *Id.* ¶ 7.

Next, Simpluris sent a Postcard Notice to each of the 10,501 Class Members for whom a valid mailing address was known.  *Id.* ¶¶ 8-10.  Around

1,400 of those notices were returned.  *Id.* ¶ 11.  Some had a forwarding address, but others did not.  *Id.*  If a mailed notice was returned without a forwarding address, Simpluris performed a public records search, commonly called a "skip trace," to locate the Class Member's current address and remailed direct notice to the newly located address or forwarding address.  *Id.*  Of the 1,390 returned Postcard Notices, 998 were re-mailed to either a newfound address or with forwarding addresses provided by USPS.  *Id.*  Ultimately, 392 were determined to be undeliverable for lack of an address.  *Id.*

Simpluris also sent a Reminder Postcard Notice to the 10,110 Settlement Class Members who did not submit a Claim Form as of December 17, 2024. *Id.* ¶ 12.  Of those Reminder Notices, 767 were returned.  *Id.* ¶ 13.  Of those 767 returned notices, 299 were remailed.  *Id.*  In the end, 468 were determined to be undeliverable, for the same reason as the original Postcard Notices.  *Id.*

Besides direct notice by postcard, Simpluris also prepared and maintained a Settlement Website.[3]  *See* Gould Decl. ¶ 10, ECF No. 45-1; Simpluris Decl. ¶ 15, ECF No. 45-2.  The Settlement Website includes downloadable copies of relevant settlement documents, including the Long Form Notice and Claim Form, the Complaint and Complaint Amendment, the Motion for Preliminary Approval and Preliminary Approval Order, the Settlement Agreement, and the Fee Motion; important dates and deadlines for Settlement Class Members; and FAQs.  Gould

---

[3] https://www.WasserstromClassActionSettlement.com

Decl. ¶ 10, ECF No. 45-1; Simpluris Decl. ¶ 16, ECF No. 45-2.  Through the Settlement Website, Class Members could submit a claim online and contact the Settlement Administrator.  Gould Decl. ¶ 10, ECF No. 45-1; Simpluris Decl. ¶ 17, ECF No. 45-2.  The website has been available to the public since October 16, 2024.  Simpluris Decl. ¶ 15, ECF No. 45-2.

Simpluris also maintains a toll-free telephone number.[4]  The number appears in the mailed Notices and on the Settlement Website.  *See id.* ¶ 17. Class Members can call the number to inquire about the Settlement.  *Id.*  The telephone number is active and has been since October 18, 2024.  *Id.*

Around 96% of the Class received at least one form of notice. Simpluris Decl. ¶ 14, ECF No. 45-2.  Upon initial review, Simpluris received 868 valid claim form submissions yielding a claims rate of approximately 8.41%.  *Id.* ¶ 21; *see also* Gould Decl. ¶¶ 11–12, ECF No. 45-1.  The expected pro rata cash payout per Class Member is thus approximately $216, according to Class Counsels' representation at the Fairness Hearing.

## II.     APPROVAL OF CLASS CERTIFICATION FOR SETTLEMENT

To grant final approval of a settlement class, the Rule 23 requirements must be satisfied.  *See* Fed. R. Civ. P. 23.  The Court has already preliminarily approved the Class for settlement purposes, ECF No. 43, and now finds that the standards required for final approval are satisfied.

---

[4] (833) 285-3416

## A.    Numerosity

To satisfy numerosity, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no strict numerical test for determining impracticability of joinder."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted).  Indeed, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc., v. EEOC*, 446 U.S. 318, 330 (1980).  Here, the Class contains over ten thousand members.  Mot. 6–7, ECF No. 45.  Numerosity is satisfied because it would be impractical, if not impossible, to join all Class Members into one action.

## B.    Commonality

To establish commonality, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the Class Members have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal quotation marks and citations omitted).  The claims "must depend upon a common contention[,]" and "[t]hat common contention . . . must be of such a nature that is capable of classwide resolution—which means that determination of its truth or its falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*. at 350.

Here, Plaintiffs' claims turn on whether Wasserstrom's security environment was adequate to protect their Private Information.  Resolution of that

inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Class Members at once.

## C. Typicality

A class representative's "claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082). The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, all claims involve Wasserstrom's conduct toward the Class Members. And the Class Representatives properly rely on the same legal theories as the rest of the Class. So the Class Representatives' claims are typical of those of the Class as a whole.

## D. Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. 157–58). To determine the adequacy of representation requirement, a court must consider two elements: "'1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representative[] will

vigorously prosecute the interests of the class through qualified counsel.'" *Pelzer v. Vassalle*, 655 F. App'x 352, 364 (6th Cir. 2016) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083).

Here, the Class Representatives and Class Members share common interests.  No conflict exists between the Class Representatives and the Class Members that they seek to represent.  And Class Counsel are thoroughly qualified in data breach litigation.  *See* Mot. 3, ECF No. 44.  Thus, adequacy is met.

## E.    Rule 23(b) Requirements

Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that common questions of fact or law predominate over any individual questions and that a class action is superior to other available methods for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011) (citing *Beattie*, 511 F.3d at 564).

Predominance is satisfied here.  There is one set of operative facts that would render Wasserstrom potentially liable to each potential class member, as evident in the Class definition.  Each Class Member alleges that Wasserstrom

should be held liable for the data breach. Consequently, the alleged injuries to Class Members are of the same nature. The Court therefore finds common questions predominate over individual issues.

### 2. Superiority

Finally, before certifying a class under Rule 23(b)(3), the Court must find that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To make this decision, the Court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

Here, class treatment is superior to other available methods. The Class Members have little interest in individually controlling separate actions as the amount of individual damages is likely to be small and far outweighed by the cost of litigation. "[S]mall awards weigh in favor of class suits." *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011) (citing cases). The Court is unaware of any litigation about this controversy that is currently pending, by or against the Class Members. It is desirable to concentrate the litigation in this forum as the Parties and, to a lesser extent, the

Court has already expended time and resources on this case. Last, the difficulties in managing a class action do not outweigh the benefits of certifying a class. Accordingly, a class action is clearly the superior method of adjudicating this case.

For these reasons, the Court **CERTIFIES** the Class for purposes of the Settlement and **APPOINTS** Raina C. Borrelli of Strauss Borrelli PLLC, Philip Krzeski of Chestnut Cambronne, and Dylan J. Gould of Markovits, Stock, & DeMarco LLC as Class Counsel.

### III.   APPROVAL OF THE PROPOSED CLASS SETTLEMENT

When deciding whether to approve a proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992) (citation omitted). For the reasons below, the Court concludes that the Settlement is fair, adequate, and reasonable.

## A. The Risk of Fraud or Collusion

First, the Court finds that there is no evidence—or even a suggestion—that the Settlement was the product of fraud or collusion. *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary." (citation omitted)). Rather, the Settlement is the result of extensive arm's-length negotiations over several months with the assistance of mediator Marjorie Aaron. The Court concludes that this factor favors Settlement approval.

## B. Complexity, Expense, and Likely Duration of Litigation

Generally, "'[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)).

Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and the possibility of further delay in recovery due to the appellate process weigh in favor of approving the Settlement. Continued litigation would require substantial time, effort, and expense, both to retain qualified experts and to conduct record review and depositions. Settling the case now saves time and money for the Parties and time for the Court.

Accordingly, this factor favors approving the Settlement. It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and uncertainty of protracted litigation.

## C.     Amount of Discovery

To confirm that Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the Parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (citations omitted). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement," courts "should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) (citation omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (citing cases).

In this case, the Parties engaged in significant informal discovery and engaged in extensive settlement negotiations, such that both sides have been able to analyze the strengths and weaknesses of their positions and determine that the Settlement is fair and reasonable under the circumstances. The Parties exchanged Rule 408 discovery to enable them to make informed decisions about

the potential resolution of this Litigation. Gould Decl. ¶ 3, ECF No. 45-. Through this pre-mediation discovery, Plaintiffs confirmed vital information about their claims, including, but not limited to, the class size, the types of data impacted in the Data Breach, and material facts surrounding the circumstances of the Data Breach. *Id.* The Court finds that both sides made well-informed decisions to enter the Settlement. This factor weighs in favor of approving the Settlement.

**D.    The Likelihood of Success on the Merits**

"The most important of the factors to be considered in reviewing a Settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Because they involve new technology and evolving law, the merits of data breach cases like this one are often uncertain. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Given the nature of the proposed Settlement, the Court finds the benefits of settlement are proportionate to Plaintiffs' likelihood of success on the merits. *See, e.g., Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011) (finding settlement is favored where the "Named Plaintiffs' likelihood of success on the merits is uncertain"). This factor therefore weighs in favor of approving the proposed Settlement.

**E.      Opinions of Class Counsel and Class Representatives**

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *See e.g., Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *see also Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").  The Court also considers the approval of the Class Representatives, particularly where they are significantly involved in the discovery and settlement negotiation process. *See e.g., Gascho v. Glob. Fitness Holdings, LLC*, Case No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014), *R&R adopted*, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016).

Here, that Class Counsel and Defense Counsel recommend that the Court approve the Settlement warrants deference.  Class Representatives have also approved the Settlement.  Accordingly, this factor supports approving the proposed Settlement.

**F.     The Reaction of Absent Class Members**

The Court must also consider the reaction of the Class Members. *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376. Here, as described above, from a pool of over ten thousand Class Members, none objected after about 96% received notice. Simpluris Decl. ¶ 14, ECF No. 45-2. This positive response from the Class Members supports approving the Settlement. *See, e.g., Moore v. Medical Fin. Services, Inc.*, No. 2:20-cv-02443, 2021 WL 6333304, at *4 (W.D. Tenn. Nov. 30, 2021) (granting final approval when "no objections were filed and only five members requested to be excluded. Accordingly, it is recommended that the reaction of the absent class members supports final approval"); *BleachTech LLC v. United Parcel Service, Inc.*, No. 14-12719, 2022 WL 2835830, at *3 (E.D. Mich. July 20, 2022) (noting that no objections to the class action settlement "was a clear indication that the Settlement Class Members support the Settlement").

**G.     The Public Interest**

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citation omitted). In this case, the Settlement confers immediate benefits on the Class Members, avoids the risks and expenses of further litigation, and conserves judicial resources. The Court therefore finds that this factor favors approving the Settlement.

\*       \*       \*

In sum, after considering the relevant factors, the Court concludes that the Settlement provides a substantial benefit to the Parties and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

## IV. ATTORNEYS' FEES AND SERVICE AWARDS

### A. Attorneys' Fees

Class Counsel seeks an attorneys' fees award of not more than one-third of the Settlement Fund. Mot. 2, ECF No. 44 at PAGEID # 440. "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Rule 23(h) authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement."

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio Dec. 31, 2007). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach. *Id.* Whichever method is utilized, the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d. at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court applies the percentage of the fund method.  *See, e.g.,*

*Gascho v. Glob. Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)

(indicating that the district court must make a "clear statement" as to which

calculation method is being applied (citation omitted)).  Accordingly, the Court will

consider the following factors in determining whether the fee request is

reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value
> of the services on an hourly basis; (3) whether the services were
> undertaken on a contingent fee basis; (4) society's stake in rewarding
> attorneys who produce such benefits in order to maintain an incentive
> to others; (5) the complexity of the litigation; and (6) the professional
> skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352 (internal quotation marks and citations omitted).

Under the circumstances of this specific case, particularly where neither

Wasserstrom nor any Class Member opposes the fee request and the Class has

received a "substantial benefit," the Court concludes that all these factors favor

approving the requested award of attorneys' fees.

As to the first factor, the Court has already described the benefit conferred

to the Class Members through Settlement.  *See supra* Part I.B.  This factor

therefore weighs in favor of approving the requested award.

Second, the value of the services on an hourly basis, multiplied by the

hourly rate, favors the proposed fee award.  In their motions for attorneys' fees,

Class Counsel explain how a cross-check of their lodestar reveals the

reasonableness of their fee award proposals.  *See* Mot. 10–11, ECF No. 44.

Their analysis shows that this factor favors granting a total award of up to one-third of the Settlement Fund.

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement. *See id.* at 9–10. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money with no guarantee of recovery. This factor favors approving the requested fee award. *See, e.g.*, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.").

The Court next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, favors an award of the requested attorney's fees. Class actions such as this have a "value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287 (citing cases). Without a class action, the Class Members would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their case.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also support granting the requested award. As touched on above, this is a complex case with nuanced

issues and significant litigation. And Class Counsel represent that they have substantial experience representing plaintiffs in data breach class actions. *See generally* Mot. Exs. 2, 3, ECF Nos. 44-2 and 44-3.

For these reasons, the Court **APPROVES** the fee award of up to one-third of the Settlement Fund, inclusive of expenses and costs, to Class Counsel. *See Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *5 (S.D. Ohio Oct. 3, 2018) ("[W]hether 24.9% or 33%, this Court finds Plaintiff's request is reasonable and well within the ranges of fees typically approved by courts in the Sixth Circuit.").

## B.    Class Representative Awards

Service awards are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix*, 322 F.3d at 897. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, Plaintiffs move to award the Class Representatives service awards of $5,000 each. Mot. 15, ECF No. 44. Class Counsel report that the Class Representatives significantly assisted in the prosecuting and settling of the litigation, including reviewing court filings and the Settlement Agreement, and

participating in negotiations. *Id.* In light of this service, the Court **APPROVES** service awards to each Class Representative in the requested amount.

## V.  CONCLUSION

For these reasons, the Court **GRANTS** final approval of the Settlement and enters final judgment as follows:

1. The Court, for purposes of this Final Judgment, adopts the defined terms as set forth in the Settlement Agreement for any term not otherwise defined herein.

2. The Court finds that the Settlement Agreement is fair, reasonable, and adequate, as expressed further herein. The Court also finds the Settlement Agreement was entered into in good faith, at arm's length, and without collusion. The Court approves and directs consummation of the Settlement Agreement.

3. The Court approves the Release provided in the Settlement Agreement and orders that, as of the Effective Date, the Released Claims will be released as to the Released Parties.

4. The Court has and reserves jurisdiction over the Settlement and this Settlement Agreement, and for purposes of the Settlement and Settlement Agreement, the Court has and reserves jurisdiction over the Parties to the Settlement.

5. The Court finds that there is no just reason for delay of entry of final judgment with respect to the foregoing.

6. The Court dismisses with prejudice all claims of the Class against Wasserstrom in the Litigation, without costs and fees except as explicitly provided

for in the Settlement Agreement.

7. The Court grants Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards. ECF No. 44. The Court awards Class Counsel $116,655 in attorneys' fees and $6,197.64 in reimbursement of expenses to be paid according to the terms of the Settlement Agreement. This amount of fees and reimbursement is fair and reasonable. The Court awards the Class Representatives, Kevin Gruscinski and Gregory Coffey, $5,000 each to be paid according to the terms of the Settlement Agreement. The award is justified based on their service to the Class.

8. On September 18, 2024, the Court entered an Order Granting Preliminary Approval of Class Action Settlement that preliminarily approved the Settlement Agreement and established a hearing date to consider the final approval of the Settlement Agreement, Class Counsel's request for Service Awards to the Class Representatives and motion for attorneys' fees and expenses. ECF No. 43.

9. The Court's Preliminary Approval Order approving the Notice Program as proposed met the requirements of Fed. R. Civ. P. 23 and due process, and is the best notice practicable under the circumstances, constituting due and sufficient notice to all persons entitled to notice.

10. The Court finds that the distribution of the Notices has been achieved pursuant to the Preliminary Approval Order and the Settlement Agreement, and that the Notice to Class Members complied with Fed. R. Civ. P. 23 and due process.

11. The Court finds that Wasserstrom has complied with the requirements of 28 U.S.C. § 1715 regarding the CAFA Notice.

12. The Court grants final approval of its appointment of Kevin Gruscinski and Gregory Coffey as Class Representatives. The Court finds that the Class Representatives are similarly situated to absent Class Members, are typical of the Class, and are adequate Class Representatives, and that Class Counsel and the Class Representatives have fairly and adequately represented the Class.

13. The Court grants final approval of its appointment of Raina C. Borrelli of Strauss Borrelli PLLC, Philip Krzeski of Chestnut Cambronne, and Dylan J. Gould of Markovits, Stock & DeMarco LLC as Class Counsel.

14. The Court certifies the following Class for settlement purposes under Fed. R. Civ. P. 23(a) and 23(b)(3), subject to the Class exclusions set forth in the Settlement Agreement: All individuals residing in the United States who were sent a notice by Wasserstrom informing them of the Data Incident Wasserstrom discovered in April 2023.

15. The Court finds that the Class defined above satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(3) for settlement purposes in that: (a) the Class of approximately 10,500 is so numerous that joinder of all Class Members would be impracticable; (b) there are issues of law and fact that are common to the Class; (c) the claims of the Class Representative are typical of and arise from the same operative facts and seek similar relief as the claims of the Class Members; (d) the Class Representatives and Class Counsel have fairly and adequately protected

the interests of the Class, as the Class Representatives have no interests antagonistic to or in conflict with the Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Class; (e) questions of law or fact common to Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement are superior to other methods available for a fair and efficient resolution of this controversy.

16. Having considered the negotiation of, the terms of, and all of the materials submitted concerning the Settlement Agreement; Plaintiffs'' likelihood of success both of maintaining this action as a class action and of prevailing on the claims at trial, including the possibility that Wasserstrom could prevail on one or more of its defenses; the range of the Class's possible recovery and the complexity, expense, and duration of the Litigation; and the substance and amount of opposition to the proposed settlement, it is hereby determined that:

a. the Class Representatives and Class Counsel have adequately represented the proposed Class;

b. the terms of the Settlement Agreement were negotiated at arm's length, vigorously advocated by experienced counsel for Plaintiffs and Defendant;

c. the outcome of the Litigation was in doubt when the Settlement was reached making the compromise under this Settlement reasonable under the circumstances;

d. it is possible the proposed Class could receive more if the Litigation were to go to trial, but it is also possible that the proposed Class could receive less (including the possibility of receiving nothing) and/or that Wasserstrom could defeat class certification;

e. the value of immediate recovery outweighs the possibility of future relief that would likely occur, if at all, only after further protracted litigation and appeals;

f. the Parties have in good faith determined the Settlement Agreement is in their respective best interests, including both Class Representatives and Class Counsel determining that it is in the best interest of the Class Members;

g. the aggregate consideration for the Class—including both the Settlement Fund, which Wasserstrom shall fund, and remedial measures Wasserstrom is implementing or has implemented—is commensurate with the claims asserted and being released as part of the Settlement; and,

h. the terms of the Settlement Agreement treat the Class Members equitably relative to each other and fall within the range of settlement terms that would be considered a fair, reasonable, and adequate resolution of the Litigation.

Therefore, pursuant to Rule 23(e), the terms of the Settlement Agreement are finally approved as fair, reasonable, and adequate as to, and in the best interest of, the Class and each of the Class Members. Class Members who did not opt-out of the Settlement are bound by this Final Approval Order.

17. The Court approves the distribution and allocation of the Settlement Fund under the Settlement Agreement. To the extent that any funds remain after the allocation of the Settlement Fund pursuant to the terms of the Settlement Agreement, Settlement benefit distributions will be increased or decreased pro rata, with attorneys' fees and expenses, Settlement Administration fees and expenses, and Class Representative Service Awards deducted first.

18. This Final Approval Order and all statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be

construed as, used as, or deemed to be evidence of, an admission by or against Wasserstrom of any claim, any fact alleged in the Litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of Wasserstrom or of the validity or certifiability for this Litigation or other litigation of any claims or class that have been, or could have been, asserted in the Litigation.

19. This Final Approval Order and all statements, documents or proceedings relating to the Settlement Agreement shall not be offered or received or be admissible in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing by Wasserstrom, or that Plaintiffs, Class Members, or any other person has suffered any damage due to the Incident. Notwithstanding the above, the Settlement Agreement and this Final Approval Order may be filed in any action by Wasserstrom, Class Counsel, or Class Members seeking to enforce the Settlement Agreement or the Final Approval Order.

20. The Settlement Agreement and Final Approval Order shall not be construed or admissible as an admission by Wasserstrom that Plaintiffs' claims or any similar claims are suitable for class treatment.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**